UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


ISAIAH WIMBLEY,

        Petitioner,

v.                                        Case No. 2:06-cv-265
                                        HON. ROBERT HOLMES BELL
JERI-ANN SHERRY,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

Petitioner Isaiah Wimbley  filed this petition for writ of habeas corpus challenging the validity of his state court conviction on five counts of first degree criminal sexual conduct. Petitioner was convicted after a jury trial and was sentenced in December 2003, to a prison term of six to fifteen years.

Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.  In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I.    The trial court committed evidentiary error infringing upon defendant's Sixth Amendment right to confrontation and Fourteenth Amendment right to due process.

II.  The cumulative effect of the prosecutor's misconduct denied defendant a fair trial.

III.  The trial court erroneously instructed the jury that a reasonable doubt "was the kind of doubt you can assign a reason for having." This burden shifting instruction requires a new trial.

IV.  Defendant was denied due process of law due to the people's prejudicial failure to establish with reasonable certainty the time of the offense.

V.  The cumulative effect of error requires that defendant be granted a new trial.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner asserts that his confrontation rights and due process rights were violated when he was prohibited from introducing evidence that the victim had Chlamydia and petitioner did not, and that the victim had inappropriate sexual conversations with someone other than petitioner. The Michigan Court of Appeals rejected these arguments, explaining the purpose of Michigan's rape shield act under MCL § 750.520(j) and why the evidence was not admissible:

> Evidence of specific instances of a victim's past sexual conduct with others is generally legally irrelevant and inadmissible under MCL 750.520(j). *People v Arenda*, 416 Mich 1, 10; 330 NW2d 814 (1982). This is because inquiries into sexual history, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury. *Id.* MCL 750.520(j)(1), provides in relevant part:

>> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value: (a) evidence of the victim's past sexual conduct with the actor; (b) evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

> However, in certain limited situations, evidence that does not come within the specific exceptions of the rape-shield statute may be relevant and its admission required to preserve a criminal defendant's Sixth Amendment right of confrontation. *People v Hackett*, 421 Mich 338, 344, 348; 365 NW2d 120 (1984). This Court applies the rape-shield statute on a case-by-case basis to balance the rights of the victim and the defendant in each case. *People v Morse*, 231 Mich App 424, 433; 586 NW 2d 555 (1998). "'In exercising its discretion, the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation.'" *People v Adair*, 452 Mich 473, 485; 550 NW2d 505 (1996), quoting *Hackett, supra* at 349.

- 4 -

While complainant did make a statement to police that she had not been with anyone else other than defendant, this statement was never introduced at trial. In addition, the prosecution's expert did not testify that there was a history of attempted sexual contact, as defendant asserts on appeal. The expert testified that she performed an exam based on the allegations made by complainant, but because of the lapse in time between the alleged sexual contact with defendant and her examination of complainant, she was unable to confirm or deny any sexual abuse. Hence, there was no testimony for defendant to rebut with the evidence of complainant's medical condition. Furthermore, defendant presented no evidence that the STD would likely have been transmitted from complainant to defendant during sexual intercourse and defendant did not suggest that the evidence was necessary to show complainant's bias or ulterior motive to make a false charge. Consequently, the evidence had marginal probative value, and, because such evidence tended to suggest that complainant was sexually active with others, it presented the type of highly prejudicial evidence that the legislature sought to bar under the rape-shield statute. MCL 750.520j(1); *Arenda, supra* at 10. Therefore, the trial court did not abuse its discretion when it refused to permit defendant to present evidence regarding the complainant's medical condition.

Similarly, the Michigan Court of Appeals rejected petitioner's claims regarding the victim's conversations with others. The court stated:

Defendant also argues that the trial court erred in excluding tape recordings of complainant's sexually explicit telephone conversations. Defendant wanted to present the recorded conversations as evidence of the complainant's ulterior motive to fabricate the charges against him. Specifically, defendant alleged that the allegations against him did not arise until after he tried to get the complainant's mother to discipline the complainant because of these conversations. The trial court denied defendant's request stating that the tape was "totally irrelevant, prejudicial, and . . . a violation of the Rape Shield Law." The court also noted "it's really disgusting for somebody to record something like that to try to smear somebody else." As stated above, Michigan's rape-shield statute, MCL 750.520j(1) bars evidence of "specific instances of the victim's sexual conduct." Our Supreme Court has interpreted MCL 750.520j(1) to include statements or references to statements made in the course of what is referred to in common parlance as 'phone sex' because they amount to a prior instance of sexual conduct. *People v Ivers*, 459 Mich 320, 329; 587 NW2d 10 (1998) (holding that, unlike

- 5 -

"phone sex," the complainant's statements to a friend regarding her readiness to have sex did not fall within the scope of the rape-shield statute because they did not reveal any prior sexual conduct). Therefore, the trial court correctly determined that the recorded conversation fell within the prohibition of the rape-shield statute.

Even though the recorded conversation fell under the rape-shield statute and did not fall within one of the statute's enumerated exceptions, this does not end our inquiry. As already noted, a defendant has a constitutional right to present some types of evidence, such as evidence demonstrating that the complainant has an ulterior motive to fabricate charges, even when the proffered evidence does not fall within one of the rape-shield statute's exceptions. *Hackett, supra* at 348. In *Hackett* our Supreme Court ruled that the procedure for determining the admissibility of evidence on this ground was to hold an *in camera* hearing to determine admissibility. *Id*. at 349-350. The Court went on to state that, at the hearing, defendant is initially obligated to demonstrate the relevance of the evidence for the purpose for which it is sought to be admitted. *Id*. at 350. However, even if the evidence is relevant, "the trial court continues to possess the discretionary power to exclude relevant evidence offered for any purpose where its probative value is substantially outweighed by the risks of unfair prejudice, confusion of issues, or misleading the jury." *Id*. at 351. In the present case, the trial court listened to the tape outside the presence of the jury and on the record and ruled that the recording was of marginal relevance that was substantially outweighed by its prejudicial value. On the record before us, we see no reason to question that determination. Therefore, there was no abuse of discretion.

Generally, evidentiary issues at trial are matters for the state court. In *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to

> deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights.  *Estelle v. McGuire*, 502 U.S. at 68.  A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process.  *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.  Petitioner has not shown that his constitutional rights were violated by the court's evidentiary rulings.

In addition to petitioner's claim of a due process violation, petitioner asserts that his Sixth Amendment right to confront the witnesses against him was denied.

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 12 L.Ed. 2d 923 (1965), "means more than being allowed to confront the witness physically."  *Davis v. Alaska*, 415 U.S., at 315, 94 S.Ct., at 1110.  Indeed, "'[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross- examination.'" *Id.*, at 315-316, 94 S.Ct., at 1110 (quoting 5 J. Wigmore,  Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original).  Of particular relevance here, "[w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis, supra*,

- 7 -

> at 316-317, 94 S.Ct., at 1110 (citing *Greene v. McElroy*, 360 U.S. 474, 496 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam ) (emphasis in original).

*Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). Petitioner has not established a violation of his confrontation rights. The evidence was properly excluded under the Michigan rape shield law. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner has asserted claims of prosecutorial misconduct asserting that he was denied a fair trial based upon the prosecutor's civic duty arguments and questions of petitioner and his wife concerning the truthfulness of the victim. The Michigan Court of Appeals rejected these claims stating:

A.      First Civic Duty Argument

Defendant first argues that the prosecutor improperly appealed to the jury's civic duty. During closing statements, the prosecutor made the following remarks:

> This is a sick, depraved situation, ladies and gentlemen. This is a situation in which we have a

- 8 -

> young girl who is powerless to defend herself,
> physically and mentally.  Powerless to defend herself.
>
> The only thing she can do is stand out, put her hand in
> the air and meekly say, "help."   Meekly say,
> "Mommy," written right there, "Mommy, help me."
> That's all she could do.
>
> When her mom decides to turn her back on her, what
> other recourse does she have?  And so here she was,
> there she is.  And what recourse does she have, ladies
> and gentlemen?  She stands on that stand and says,
> "Help."  That's what she's asking for.
>
> She has neither the strength, maturity, mental ability
> to help herself in this case.  She's asking us for help.
> That's why we're here.  That's why I'm asking you to
> help her.

The prosecutor closed his remarks by stating, "I'm begging you,
ladies and gentlemen.  You have a duty to do today.  I ask that you do
your duty carefully, considerably and understandably.   Asking for
your help.  Give it to her."

While a prosecutor may not resort to civic duty arguments that appeal
to the fears and prejudices of jury members, prosecutors are accorded
great latitude regarding their arguments and conduct.   *People v
Bahoda*, 448 Mich 261, 282; 531 NW2d 659(1995).  For this reason,
this Court will "not review the prosecutor's remarks in []a vacuum;
the remarks must be read in context."   *People v Kennebrew*, 220
Mich App 601, 608; 560 NW2d 354 (1996).  The scope of the review
is important, "because an otherwise improper remark may not rise to
an error requiring reversal when the prosecutor is responding to the
defense counsel's argument."  *Id*.

At trial, the complainant testified that she attempted to enlist her
mother's help in preventing the sexual abuse, but was unable to
obtain her help.  Indeed, the complainant's mother actually testified
on behalf of defendant.  Hence, these remarks were fair commentary,
based on the evidence, that the complainant had no one at home to
help her.  Taken in context, these remarks were not an appeal to the
jury to convict based on a sense of civil duty.  See *People v Wise*, 134
Mich App 82, 104; 351 NW2d 255 (1984).  In fact, in his rebuttal, the
prosecutor told the jury that it should convict because the facts
support such a conviction, not because it has a civic duty to convict

- 9 -

defendant. Consequently, these remarks did not rise to the level of an "argument that the jury should convict defendant regardless of the evidence." *People v Matuszak*, 263 Mich App 42, 56; 687 NW2d 342 (2004). Furthermore, while these remarks were emotional, emotional language may be used during closing argument and is "an important weapon in counsel's forensic arsenal." *People v Mischley*, 164 Mich App 478, 483; 417 NW2d 537 (1987). Even if we were to characterize these comments as an impermissible appeal to the jury to convict based on civil duty, any prejudice was cured when the trial court instructed the jury that the closing arguments were not evidence and that any argument that was not supported by the evidence should be ignored. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."). Therefore, there was no plain error, let alone plain error affecting defendant's substantial rights.

B.      Improper Invitation to Comment on Witness Credibility

Defendant next argues that the prosecution improperly sought to discredit defendant by demanding that he and his wife label the complainant a liar on cross-examination. Defendant correctly notes that the prosecution may not ask a defendant to comment on the credibility of prosecution witnesses because a defendant's opinion of their credibility is not probative. *People v Buckley*, 424 Mich 1, 17; 378 NW2d 432 (1985). However, such improper questions do not necessarily result in unfair prejudice to defendant. *Id*. (holding that where the substance of the exchange indicates that defendant dealt rather well with the questions, the Court will not find prejudice occurred). In this case, defendant and his wife handled the prosecutor's questions well. Therefore, these questions did not amount to plain error that affected defendant's substantial rights.

C.      Second Civic Duty Argument

Finally, defendant argues that the prosecution improperly appealed to civic duty by stating:

> What do you think happened that afternoon? The horrible burden that the girl has had to carry. And I am begging you, members of the jury, to take that burden away. You can't take it all away, ladies and gentlemen, but you can take a large portion of it away and you can protect, hopefully, a few other girls from having to go through this as well.

- 10 -

This comment was improper.  However, a preserved nonconstitutional error is not grounds for reversal unless defendant demonstrates that it is more probable than not that the error was outcome determinative.  *Lukity, supra* at 495-496.  Following closing arguments, the trial court instructed the jury that its job was to decide the facts and apply the law as given by the trial court, that it could only consider the evidence admitted, and that the lawyers' statements and arguments were not evidence.  These instructions cured any prejudice against defendant that may have resulted from the prosecutor's statements.  *Abraham, supra* at 279.

Because the prosecutorial conduct at issue was either within the bounds of the adversarial process or had little prejudicial effect, defendant is not entitled to a new trial based on prosecutorial misconduct.

Petitioner has failed to show how his rights were violated or that any prejudice resulted from these alleged errors.  Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial.  *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982).  *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action).  Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial.  *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989).  In the opinion of the undersigned, petitioner has failed to establish constitutional error.  The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that the court improperly instructed the jury on reasonable doubt.

The Michigan Court of Appeals rejected this claim stating:

> Defendant next argues that the trial court erred during closing arguments when it described a reasonable doubt as "a doubt that's based on reason," the kind of a doubt that you can assign a reason for having," and a "fair, honest, and reasonable doubt." We disagree. This issue was not preserved by an objection before the trial court and will be reviewed for plain error affecting substantial rights. *McLaughlin, supra* at 645. While not perfect, the instructions accurately conveyed the concept of reasonable doubt to the jury. See *People v Nickson*, 120 Mich App 681, 688; 327 NW2d 333 (1982) (holding that an instruction informing jurors that a reasonable doubt was "an honest doubt based upon reason," did not improperly shift the burden of proof to defendant); *People v Jackson*, 167 Mich App 388, 391-392; 421 NW2d 697 (1988) (holding that an instruction defining reasonable doubt as a doubt founded in reason that arises from the evidence or lack thereof was not improper). Hence, there was no error.

Petitioner failed to object to the instructions at trial. Therefore, this issue was not preserved. The Michigan Court of Appeals expressly relied on Michigan's contemporaneous objection rule in denying petitioner's claim. It is clear that the contemporaneous objection rule was well-established at the time of petitioner's trial. *See, e.g.*, *People v. Kelly*, 423 Mich. 261, 271 (1985). A rule designed to arm trial judges with the information needed to rule reliably "serves a governmental interest of undoubted legitimacy." *Lee v. Kemna*, 534 U.S. 362, 384 (2002). Petitioner's failure to comply with the state's independent and adequate state procedural rule, i.e., making a contemporaneous objection, caused him to default his claims in state court. *See Wainwright*, 433 U.S. at 87-88; *West v. Seabold*, 73 F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996). Further, even though the court of appeals applied a limited review of the claimed error to determine whether it affected the outcome, petitioner's failure to object is still considered a procedural default. *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989); *accord Federico v. Yukins*, No. 93-

2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994), *cert. denied*, 514 U.S. 1038 (1995).

Accordingly, review by this court is barred unless petitioner can show cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

      The Supreme Court has held that, "Before a federal court may overturn a conviction resulting from a state trial, it must be established not merely that the instruction is undesirable, erroneous,. . .or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). That Court went on to say that the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147. Petitioner has not shown that any alleged defects in the instructions were so defective as to deprive him of his constitutional rights.

      Moreover, the Supreme Court has held that, "The Constitution does not dictate that any particular form of words be used in advising the jury of the government's burden of proof, so long as taken as a whole the instructions correctly convey the concept of reasonable doubt." *Victor v. Nebraska*, 511 U.S. 1 (1993); *Holland v. United States*, 348 U.S. 121, 140 (1954). Petitioner has not established that the jury instruction regarding reasonable doubt which was given during his trial violated the Constitution. The Michigan Court of Appeals found that the instructions, on the whole, accurately conveyed the meaning of reasonable doubt to the jury. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

- 13 -

Petitioner asserts that error occurred due to the lack of specificity in the information regarding the dates of the offense. Petitioner's claim is a matter of state law not actionable in a habeas proceeding. A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed. Petitioner has made a general claim that due process interests were implicated. However, petitioner has failed to show a violation of constitutional law or that the Michigan Court of Appeals' decision was unreasonable.

Petitioner asserts that the cumulative effect of the errors violated his constitutional rights. The Michigan Court of Appeals rejected this claim concluding that only one error was found and the error was cured by the jury instructions. Petitioner cannot show a violation of his constitutional rights or that the Michigan Court of Appeals' decision was unreasonable.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is

- 14 -

warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Petitioner's constitutional rights were not violated by the court's evidentiary rulings or jury instructions. Petitioner has failed to show prosecutorial error that rendered his trial unfair, or that the court erred by failing to specify the dates of the offense. Further, petitioner has not established that his asserted errors had a cumulative effect that violated his rights. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  May 28, 2009

- 15 -